FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 0 7 2016

JAMES W. McCORMACK, CLERK

By: _____
DEP CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

| | |
|---|---|
| DARREN G. MCFADDEN, an individual, | ) Case No.: 4:16 CV 319 KGB |
| Plaintiff, | ) |
| | ) **COMPLAINT for:** |
| v. | ) |
| | ) 1. **RESULTING OR CONSTRUCTIVE** |
| MICHAEL VICK, an individual, and DOES | )    **TRUST;** |
| 1-10 inclusive, | ) 2. **FRAUD;** |
| | ) 3. **BREACH OF FIDUCIARY DUTY AND** |
| Defendants. | )    **PROFESSIONAL DUTY OF CARE;** |
| | ) 4. **CONVERSION;** |
| | ) 5. **BREACH OF CONTRACT;** |
| | ) 6. **UNJUST ENRICHMENT;** |
| | ) 7. **FRAUD BY WIRE – 18 U.S.C. §1343;** |
| | ) 8. **VIOLATION OF ARK. CODE ANN. § 23-** |
| | )    **42-301;** *and for an* |
| | ) 9. **ACCOUNTING** |
| | ) |
| | ) **DEMAND FOR JURY TRIAL** |

This case assigned to District Judge _Baker_
and to Magistrate Judge _Deere_

Plaintiff, Darren G. McFadden ("McFadden" or "Plaintiff"), by and through his undersigned counsel, hereby files his Complaint against Defendant Michael Vick ("Vick" or "Defendants") and DOES 1-10 inclusive, and, in support thereof, alleges as follows:

## INTRODUCTION

1.      This is a case about an unscrupulous business manager and financial advisor who not only commandeered and misappropriated millions of dollars from his client, but habitually neglected and mishandled the most fundamental duties owed to Plaintiff, a professional football player in the National Football League ("NFL").

2.      Defendant Vick specifically targeted Plaintiff while working at Ameriprise Financial Services, Inc., by representing that Plaintiff would benefit from the confidence, convenience and continuity of having all of his financial matters handled and administered by one individual singularly devoted to his business management needs. To induce Plaintiff to entrust Vick with overseeing and managing all Plaintiff's earnings and income, Vick exalted his alleged specialization in financial management of clients in the professional sports industry, expressing to Plaintiff that this specialized

1

1  expertise would allow Plaintiff to benefit from unprecedented returns to meet both his short and long
2  term financial goals, including planning for retirement.

3      3.    After manipulating control of virtually the entirety of Plaintiff's income and assets
4  through a sweeping and fraudulently-induced power of attorney, Vick promptly began converting a
5  substantial portion of Plaintiff's monies and assets for his own personal use and gain, thereafter
6  claiming through purported gross mismanagement and recklessness to have "lost" a significant portion
7  of Plaintiff's monies and assets. During this time, Vick habitually deceived Plaintiff regarding the
8  entrusting and custodianship of Plaintiff's funds and assets, going so far as to fabricate fictitious
9  transactions, records and "spreadsheets" to conceal Vick's pervasive and widespread theft and
10  mismanagement.

11     4.    Rather than securing for Plaintiff a lifetime of financial security as Defendant Vick
12  promised Plaintiff, Defendant Vick covertly used Plaintiff's income as his personal slush fund to
13  subsidize his own lifestyle and expenses and to invest in his own projects, ultimately, through theft or
14  gross mismanagement, losing and/or misappropriating approximately $15,000,000.00 of Plaintiff's
15  monies and assets, while further wrongfully encumbering Plaintiff with debts and related penalties.

16     5.    Accordingly, Plaintiff McFadden, through this Complaint, seeks redress for the
17  actionable conduct and resultant harm caused by what should have been a trusted advisor.

18                                **THE PARTIES**

19     6.    Plaintiff McFadden, an individual, is a citizen and resident of Denton County, Texas.

20     7.    Upon information and belief, Defendant Vick is an individual who is a citizen and
21  resident of Pulaski County, Arkansas.

22     8.    The true names or capacities, whether individual, corporate or otherwise, of the
23  Defendants named herein as DOES 1 through l0, inclusive, are unknown to Plaintiff, who therefore
24  sues said Defendants by such fictitious names. Plaintiff will seek leave of Court to amend this
25  Complaint and insert the true names and capacities of DOES when they have been ascertained.

26     9.    Plaintiff is informed and believes and, on that basis alleges that each of the Defendants
27  designated herein as a "DOE" is legally responsible in some manner for the events and happenings
28  herein alleged, and that Plaintiff's damages as alleged herein were proximately caused by DOES.

10.     Plaintiff is informed and believes and, on that basis alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were actually and proximately caused by their conduct.

11.     Plaintiff is informed and believes and, on that basis alleges that at all times material hereto, each Defendant has authorized, approved, ratified and/or endorsed the acts of each remaining Co-Defendant.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action by reason of diversity of citizenship pursuant to 28 U.S.C. § 1332.

13.     The amount in controversy in this action exceeds $75,000.00, exclusive of attorneys' fees, interest and costs.

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1), (b) (2) and (c)(2) because Defendant is subject to personal jurisdiction in this District. The District has personal jurisdiction because Defendant's principal places of business and residence are located in this District and a substantial part of the events giving rise to Plaintiff's claims took place in this District. Furthermore, Defendant transacts business in this District, has committed tortious acts in this District, and has engaged in activities in this District that subject him to the jurisdiction of this Court.

## ALLEGATIONS COMMON TO ALL CLAIMS

15.     Plaintiff McFadden is currently an American football running back for the Dallas Cowboys of the NFL. Plaintiff played college football for the University of Arkansas, and was picked fourth overall by the Oakland Raiders in the 2008 NFL Draft.

16.     Defendant Vick is a former financial broker with the security firm Ameriprise Financial Services, Inc. ("Ameriprise").

17.     Upon information and belief, at the time Defendant Vick left the employ of Ameriprise in or around 2010 to work solely as the business manager and financial advisor to Plaintiff, he was no longer a registered or licensed advisor consistent with the governing Investment Advisers Act, proceeding instead to unlawfully purport to manage Plaintiff's funds without the requisite licenses.

**Plaintiff's Retention of Defendant Vick as a Personal Financial Advisor and Business Manager**

18.    In or around 2008, after Plaintiff commenced his career as an NFL professional football player, Plaintiff was referred to Ameriprise based upon its reputation for providing guidance and advice to high profile celebrities and professional athletes. During this time, Plaintiff entered into an agreement with Ameriprise whereby Ameriprise agreed to provide valuable business and financial management services to Plaintiff, including endorsing recommending its then employee, Defendant Vick, as an alleged trusted and vetted financial advisor to oversee and manage Plaintiff's funds.

19.    While at Ameriprise, and immediately commencing in or around 2008, under the auspices and supervision of Ameriprise, Plaintiff began to work with Defendant Vick in Defendant Vick's capacity as an employee of Ameriprise for the purpose of having Defendant Vick oversee and manage Plaintiff's investments while providing additional financial services for purported protection of Plaintiff.

20.    Thereafter, in or around 2010, Defendant Vick, conceiving a self-serving opportunity of a more lucrative personal enterprise, purportedly dissociated from Ameriprise for the express purpose of enticing Plaintiff to engage Defendant Vick personally as Plaintiff's trusted financial advisor and business manager.

21.    In furtherance of his desire to secure dominion over all of Plaintiff's finances, Defendant Vick employed a series of false representations and omissions to convince and coerce Plaintiff to retain Defendant Vick as Plaintiff's exclusive business manager and financial advisor to safeguard his assets and protect his finances.

22.    Defendant Vick, in inducing Plaintiff to repose trust and confidence in Defendant Vick, represented and promised to Plaintiff that Defendant Vick (i) was registered and would, at all times relevant, remain registered as an investment advisor; (ii) maintained specialization in the professional sports industry; (iii) would honor and respect the three primary fiduciary duties of care, loyalty and good faith; (iv) would remain prudent in his choices of investments; (v) would avoid at all times self-dealings of any kind; and (vi) would protect and appreciate Plaintiff's earnings.

23.    Defendant Vick further characterized himself as an experienced business manager and financial advisor who specialized in the financial and business management of athletes and others with

substantial incomes and who could protect Plaintiff from the theft, waste, drainage, mismanagement and improper investment of finances that can often result from accelerated access to significant income.

24.     In reliance upon Defendant's misrepresentations to Plaintiff, including Defendant's material misrepresentation that he fully intended to safeguard Plaintiff's assets and protect his finances, Plaintiff ultimately agreed to allow Defendant Vick to serve exclusive business manager and financial advisor.

25.     Specifically, Plaintiff McFadden and Defendant Vick entered into a verbal understanding for Defendant Vick to serve as Plaintiff's business manager and financial advisor, wherein Defendant Vick agreed to be responsible for all financial and tax aspects of Plaintiff's career as a professional athlete and all sources of direct and ancillary income, including the provision of accounting, business management, tax, payroll, insurance and investment services.

26.     At all times, Defendant Vick promised and assumed all obligations associated with maintaining and safeguarding Plaintiff's bank and investment accounts, while ensuring that Plaintiff's funds were protected and properly invested for purposes of retirement planning.

27.     Pursuant to Defendant Vick's representation, Defendant Vick was to be principally responsible for coordinating and managing all of Plaintiff's cash and assets. In consideration for what Vick unilaterally characterized as a "reasonable compensation for services rendered", Defendant Vick assumed exclusive control and responsibility for the management of all of Plaintiff's financial affairs.

28.     More specifically, pursuant to Defendant Vick's promises and representations to Plaintiff, Defendant Vick would provide business and financial advisor services to Plaintiff, including purported specialized services enveloping the management of Plaintiff's bank accounts; management of Plaintiff's credit card accounts; payment of Plaintiff's expenses; providing sufficient cash for Plaintiff to pay his personal expenses; management of investment and retirement accounts; management of real estate investments; and provision of advice regarding wealth and cash management, growth, income preservation, and wise investment strategies.

29.     Previously, Defendant Vick had admonished Plaintiff that in agreeing to monitor and safeguard Plaintiff's use of cash to protect Plaintiff's earnings, Defendant Vick needed to be further empowered to help Plaintiff avoid the "financial disasters" that tend to flow from unsound spending

1    habits, poor management, or speculative financial advice.

2        30.    Specifically, on or around August 10, 2008, as an employee under the supervision and
3    control of Ameriprise, and through the representations and assurances of Ameriprise, Defendant Vick
4    convinced Plaintiff to execute a durable power of attorney effectively appointing Defendant Vick as
5    Plaintiff's agent and attorney-in-fact in connection with Plaintiff's finances and management of real
6    property, authorizing Defendant Vick to fully control and manipulate Plaintiff's finances, including
7    withdrawing funds, from Plaintiff's financial accounts, signing checks on Plaintiff's behalf, entering
8    into contracts on behalf of Plaintiff and withdrawing funds from Plaintiff's accounts (the "Power of
9    Attorney"). A true and correct copy of the Power of Attorney Defendant Vick, through Ameriprise,
10   coerced Plaintiff into executing, is attached hereto as Exhibit "A".

11       31.    Consequently, on or around August 10, 2008, Defendant Vick, with the backing and
12   support of Ameriprise, effectively assumed control of all of Plaintiff's financial accounts, which Vick
13   was retained to advise, oversee, manage and safeguard for Plaintiff.

14       32.    Thereafter, on or around January 13, 2009, Defendant Vick further instructed Plaintiff to
15   execute an additional document reiterating the "appointment" of Defendant Vick as Plaintiff's financial
16   representative authorized to act on Plaintiff's behalf for various delineated banking transactions. A true
17   and correct copy of this authorization is attached hereto as Exhibit "B".

18       33.    When Plaintiff agreed to work with Defendant Vick, Plaintiff believed and intended that
19   Defendant Vick would closely and competently monitor Plaintiff's financial affairs to protect and
20   safeguard his earnings.

21       34.    By agreeing to provide these services, Defendant Vick became a fiduciary and trusted
22   advisor of Plaintiff. Plaintiff conferred confidence in Vick, and trusted Vick to manage his affairs and
23   finances diligently, carefully, faithfully, honestly, and with the kind of diligence that he would treat his
24   own financial affairs (*Plaintiff was completely unaware that Defendant Vick actually perceived*
25   *Plaintiff's finances as his own*).

26       35.    In providing services as a fiduciary of Plaintiff, Defendant Vick was responsible to
27   monitor and control all of Plaintiff's earnings and bank accounts. Specifically, Defendant Vick
28   managed a primary bank account that received all of Plaintiff's earnings and invested a significant sum

of funds in various securities. In managing that account, among others, Defendant Vick was responsible for making disbursements from that earnings account for proper, lawful and approved expenses.

36.     Critically, in managing Plaintiff's financial affairs, Defendant Vick promised and represented that he would, at all times, openly account to Plaintiff regarding all such financial transactions and investments and further provide Plaintiff with detailed comprehensive reports.

37.     In the role as Plaintiff's business manager, Defendant Vick handled all of Plaintiff's financial affairs, including performing the tasks of an accountant, monitoring Plaintiff's financial accounts, advising Plaintiff with respect to investments and paying bills on Plaintiff's behalf.

38.     In addition, Defendant Vick assumed the role of forming several business entities or ventures for Plaintiff while appointing himself as the manager of all such businesses formed on behalf of or for the benefit of Plaintiff, including the custodian of all monies invested and/or received in connection with such businesses.

39.     Upon information and belief, at the time Defendant Vick left Ameriprise in 2010, Defendant Vick allowed his financial advisor licenses and registrations to lapse.

**Defendant Vick's Systematic Theft and Conversion of Plaintiff's Funds**

40.     At the time of Plaintiff's retention of Defendant Vick as his business manager and "financial representative" to safeguard his assets and protect his finances, Plaintiff's investment portfolio initially consisted of a significant amount of cash and assets.

41.     Following Plaintiff's termination of Defendant Vick years later, it was recently learned that Defendant Vick, through gross incompetence, self-dealing and outright theft, had managed to conceal from Plaintiff that Defendant Vick had either stolen, misappropriated or lost approximately $15,000,000.00 of Plaintiff's funds from Plaintiff's financial accounts.

42.     Notwithstanding that several of Plaintiff's various stocks, bonds and property investments may have increased in value, this ostensible increase in wealth was and remains hidden and/or converted by Defendant Vick.

43.     As Plaintiff just recently discovered, without Plaintiff's knowledge or consent, and commencing almost immediately after the initiation of Plaintiff's retention of Defendant Vick while Defendant Vick was working with Ameriprise, Defendant Vick violated the significant trust and

confidence Plaintiff reposed in Defendant Vick and began commandeering Plaintiff's funds for his own personal use, purchasing property and/or businesses with Plaintiff's funds only to thereafter fraudulently transfer the title of such property and/or business into Defendant's name, and generally recklessly managing Plaintiff's finances, causing severe harm and damage to Plaintiff.

44.     Defendant Vick's theft and misappropriation of Plaintiff's funds ranged from using the induced Power of Attorney to engineer prolific withdrawals or transfers of monies from Plaintiff's accounts directly to Defendant Vick, to convincing Plaintiff to create businesses that Defendant Vick would ultimately just use to conceal and obfuscate his perpetual theft of Plaintiff's monies.

45.     One such business involved Defendant Vick pressuring Plaintiff to start a venture creating and manufacturing bitcoins, guaranteeing Plaintiff that even if the venture did not generate profits, Defendant would guarantee that Plaintiff would not lose any money. Furthermore, Defendant promised to pay back Plaintiff any funds that Plaintiff invested in such business venture. Instead, consistent with Plaintiff's recently-revealed pattern and practice, Defendant Vick used Plaintiff's funds to start this bitcoin "business", including using all of Plaintiff's monies to purchase all the necessary infrastructure and materials, only to retain all the revenues generated or derived from the "business" along with all the corresponding business assets purchased with Plaintiff's money.

46.     More recently, Defendant Vick has started to claim sole ownership and dominion over the businesses he purportedly started with Plaintiff's funds, while also refusing to allow Plaintiff access to any financial documents or information regarding the ventures.

47.     Consistent with the foregoing, Defendant Vick never provided any such bitcoin business profit and/or loss details to Plaintiff's tax professional in connection with preparation of Plaintiff's state and federal tax returns.

48.     Upon information and belief, Defendant Vick invested approximately $3,000,000.00 of Plaintiff's funds in such bitcoin business venture without paying any return to Plaintiff since 2010.

49.     Defendant Vick further summoned his relationships with local banking institutions to proactively conceal his unfettered theft and misappropriation of Plaintiff's funds, avoiding the requisite suspicious activity reports that should have been generated and immediately forwarded to Plaintiff following Defendant Vick's substantial and prolific cash withdrawals of Plaintiff's funds.

**Plaintiff's Termination of Defendant Vick**

50.     Plaintiff recently discovered Defendant's theft and gross mismanagement of Plaintiff's funds after Defendant Vick offered to sell him a building Defendant had purchased with Plaintiff's funds back to Plaintiff.

51.     After Plaintiff's representatives began to further scrutinize Defendant Vick's purported transactions on Plaintiff's behalf, including fabricated "spreadsheets" Defendant Vick prepared allegedly detailing Defendant Vick's "management" of Plaintiff's funds, it was revealed that Defendant Vick had stolen and lost millions of dollars of Plaintiff's funds.

52.     While Plaintiff began reviewing the limited and distorted financial documents Defendant Vick was providing to Plaintiff, Plaintiff ultimately revoked the Power of Attorney and terminated Defendant Vick from acting on behalf of Plaintiff in any capacity on or around May 15, 2015. A true and correct copy of this Power of Attorney Revocation is attached hereto as Exhibit "C".

53.     Until around this time, Defendant Vick had previously failed and refused to provide Plaintiff with any accountings related to Defendant's "management" and "oversight" of Plaintiff's funds, further refusing to provide any financial statements until over five months after his termination, specifically withholding any such statements until in or around October, 2015.

54.     Additionally, until around this time, Plaintiff was unaware that Defendant Vick was purportedly no longer affiliated with Ameriprise in any respect.

**Plaintiff's Substantial Injuries**

55.     As a result of Defendant Vick's failure to properly manage his funds, Plaintiff incurred substantial damages resulting from, among other things: (i) Vick's failure to properly invest and diversity Plaintiff's fund; (ii) inaccurate reporting of expenses on Plaintiff's tax return; (iii) theft and conversion by Vick; (iv) late fees and interest paid based on Vick's failure to pay bills in a timely manner; (v) expenses associated with the reduction in Plaintiff's credit score as a result of such late payments; and (vi) unsuitable asset allocation of funds that remained in Defendant's various personal accounts.

56.     The amount of money Defendant Vick paid himself for such "services" that were either not performed at all, or performed inadequately, negligently, recklessly, and without the due care

required of Defendant Vick acting as the fiduciary and trustee of Plaintiff is still unknown at this time.

57.   The total damages owed to Plaintiff are at least $15,000,000.00. Plaintiff will not know the full extent of the damages suffered until he is certain he has received all documents pertaining to the services rendered to him by Defendant Vick.

58.   All conditions precedent to the bringing of this action have occurred, been waived or performed.

## COUNT I
## RESULTING OR CONSTRUCTIVE TRUST

59.   Plaintiff repeats and re-alleges each and all of the allegations contained in paragraphs 1 through 58 inclusive, and incorporates those allegations at this place by this reference as though set forth in full.

60.   As Plaintiff's financial advisor and business manager, Defendant promised that he would honestly safeguard Plaintiff's assets and protect his finances, including those assets and finances that Plaintiff entrusted to Defendant.

61.   Instead, Defendant systematically and repeatedly commandeered and misappropriated funds from Plaintiff which have been wrongfully, fraudulently and unlawfully obtained through the use of deceit, false representation, duress and undue influence.

62.   Defendant has unlawfully transferred some of Plaintiff's funds to accounts in Defendant's personal control, and has used funds Defendant unlawfully obtained from Plaintiff to purchase certain property and businesses, but the title remains in the name of Defendant.

63.   Defendant is under an equitable duty to convey all such property to Plaintiff because Defendant would otherwise be unjustly enriched.

64.   Defendant retained title to all such property through improper means including fraud and breach of fiduciary duties owed to Plaintiff.

65.   Plaintiff has all the beneficial and equitable interest in all such property because Plaintiff unknowingly supplied the purchase money and Defendant retained title by improper means. Plaintiff is entitled to an order declaring all such property to be held in a resulting or constructive trust, or both, for Plaintiff by Defendant and compelling Defendant to convey title to Plaintiff.

66.     Before any money judgment is satisfied in full, Plaintiff seeks a constructive trust to be imposed over any property Defendant purchased with Plaintiff's funds. A constructive trust is an appropriate remedy where, as here, one party wrongfully and unlawfully takes the property of another and uses it to purchase a tangible asset, including real property.

## COUNT II
## FRAUD

67.     Plaintiff repeats and re-alleges each and all of the allegations contained in paragraphs 1 through 66 inclusive, and incorporates those allegations at this place by this reference as though set forth in full.

68.     Defendant Vick, individually and in his capacity as an accountant and financial advisor with Ameriprise, made myriad false representations and false statements of material fact to Plaintiff, including, without limitation, that Plaintiff was in great financial condition and that his wealth and assets were significantly increasing in value under Defendant Vick's oversight and control.

69.     Defendant Vick also represented that he would, on behalf of Plaintiff, only make investments which were sound and secure.

70.     At the time Defendant Vick made these statements, he knew the representations were false.

71.     Defendant Vick only made these false statements to lull Plaintiff into a false sense of financial security and to dissuade Plaintiff from requesting backup or substantiated documents or materials that would reveal Defendant Vick's systematic theft and misappropriation of Plaintiff's funds.

72.     Defendant Vick omitted material facts necessary to make previous statements of fact, in light of the circumstances in which they were made, not misleading or untrue, routinely failing to disclose material information on Plaintiff's financial statements or tax returns.

73.     By making these statements, Defendant Vick intended to induce Plaintiff to act in reliance upon these misrepresentations and omissions.

74.     The representations of fact made by Defendant Vick were a substantial factor in influencing Plaintiff's decision to retain Defendant Vick as his sole business manager.

75.     Plaintiff did, in fact, justifiably rely upon these representations and, as a result, sustained

significant monetary damages.

76.     Defendant Vick is now purportedly unable to account for the millions of dollars either converted or negligently lost.

77.     As a result of Defendant Vick's fraud, Plaintiff has suffered damages to be proven at trial.

## COUNT III
## BREACH OF FIDUCIARY DUTY AND PROFESSIONAL DUTY OF CARE

78.     Plaintiff repeats and re-alleges each and all of the allegations contained in paragraphs 1 through 77 inclusive, and incorporates those allegations at this place by this reference as though set forth in full.

79.     At all times herein, Defendant Vick was acting as an agent and accountant rendering professional services and investment advice for the benefit of Plaintiff.

80.     Defendant therefore assumed a fiduciary position to Plaintiff, owing Plaintiff the fiduciary obligations of good faith, honesty, trust, loyalty and due care, and to avoid self dealing and to account for all of Defendant's actions. Defendant's obligations included to act in the best interest of Plaintiff and to put Plaintiff's interests above his own so as to benefit Plaintiff and not in furtherance of his personal benefit or interest.

81.     As a fiduciary, Defendant should be held liable for his conduct which did not meet the requisite standards of fair dealing, good faith, honesty, and loyalty and which constitutes self-dealing.

82.     Defendant breached his fiduciary duties, including his duty of loyalty, by engaging in actions constituting self-dealing, by making unsound investments in his own businesses and thereafter converting Plaintiff's funds for his own personal use, benefit and consumption.

83.     Defendant breached his legal or equitable duties to Plaintiff, which, irrespective of the moral guilt of Defendant, tended to and did in fact deceive Plaintiff.

84.     As a result of Defendant's improper actions, funds belonging to the Plaintiff, approximately $15,000,000.00, were improperly converted and/or lost due to negligence by Defendant.

85.     Plaintiff suffered damage as result of Defendant's constructive fraud and breach of fiduciary duties. Such damage is equal to the total amount of Plaintiff's financial losses, plus pre- and post-judgment interest accruing at the highest legal rate, plus attorneys' fees and litigation expenses.

## COUNT IV
## CONVERSION

86.     Plaintiff repeats and re-alleges each and all of the allegations contained in paragraphs 1 through 85 inclusive, and incorporates those allegations at this place by this reference as though set forth in full.

87.     Defendant has improperly converted and misappropriated monies belonging to Plaintiff for his own use and purposes.

88.     As more fully set forth above, Defendant has taken money from the Plaintiff under the guise and pretext of investing the money in various investment vehicles, including investment contracts, promissory notes, securities and real property.

89.     In fact, Defendant has misappropriated and converted Plaintiff's funds for his own use and purposes and has refused to account for or return the funds despite demand.

90.     Defendant has concealed the whereabouts of the funds, has taken overt and affirmative acts to conceal their activities and has improperly misappropriated and converted funds belonging to Plaintiff for his own use.

91.     Plaintiff owns and is entitled to the return of his funds which have been misappropriated by Defendant, plus interest.

92.     Defendant intentionally took control over Plaintiff's funds and misappropriated them, in violation of Plaintiff's rights and in direct contravention of Plaintiff's rights in and to his assets and property.

93.     As a result of Defendant's conversion, Plaintiff has suffered damages in excess of that required for federal diversity jurisdiction.

94.     Defendant's conversion of Plaintiff's property was intentional and was conducted willfully, wantonly, and with a reckless and conscious disregard for the consequences. Accordingly, Plaintiff is entitled to punitive damages against Defendant in an amount to be determined by a jury.

## COUNT V
## BREACH OF CONTRACT

95.     Plaintiff repeats and re-alleges each and all of the allegations contained in paragraphs 1 through 94 inclusive, and incorporates those allegations at this place by this reference as though set

forth in full.

96.     Plaintiff entered into a contract with Defendant Vick.

97.     Specifically, in exchange for a *"reasonable fee"*, Defendant Vick agreed to provide business manager services for the exclusive and express benefit of Plaintiff.

98.     Pursuant to the parties' agreement, Defendant Vick expressly promised to maintain sufficient books and record of Plaintiff's finances and to fully account to Plaintiff at Plaintiff's request and discretion.

99.     Defendant Vick has not done what the parties' contract required of him.

100.    Specifically, among other material breaches, Defendant Vick has refused to provide Plaintiff with a full accounting, necessarily failing and/or refusing to substantiate and/or justify the loss of approximately $15,000,000.00 of Plaintiff's funds.

101.    Defendant Vick has further materially breached the parties' agreement by converting Plaintiff's funds and negligently investing such funds.

102.    As a result of these material breaches of contract, Plaintiff has sustained damages in excess of that required for federal diversity to be proven at trial.

### COUNT VI
### UNJUST ENRICHMENT

103.    Plaintiff repeats and re-alleges each and all of the allegations contained in paragraphs 1 through 102 inclusive, and incorporates those allegations at this place by this reference as though set forth in full.

104.    Defendant Vick has engaged in improper acts in order to facilitate the conversion of Plaintiff's funds without recognizing any required legal obligations arising in connection with the receipt and/or expenditure of these funds.

105.    Defendant Vick has obtained and/or converted approximately $15,000,000.00 in funds from Plaintiff without honoring his legal obligations arising in connection with such funds. As a result, Defendant Vick has been unjustly enriched.

106.    Defendant Vick is not entitled to this enrichment, and this enrichment was obtained to the detriment of Plaintiff. Therefore, Defendant should restore this unjust enrichment to Plaintiff.

107.    Defendant has obtained such funds under circumstances which require its repayment in

equity and good conscience.

108.   The above-described actions of Defendant Vick constitute the operative acts, the requisite intent, and the situation necessary in order to make Defendant Vick's enrichment unjust and compensable.

109.   Under principles of equity and justice, Defendant Vick should restore the above described enrichment in an amount in excess of that required for federal diversity jurisdiction.

## COUNT VII
## FRAUD BY WIRE – 18 U.S.C. §1343

110.   Plaintiff repeats and re-alleges each and all of the allegations contained in paragraphs 1 through 109 inclusive, and incorporates those allegations at this place by this reference as though set forth in full.

111.   International and domestic financial transactions occur today with almost instantaneous execution.

112.   Speed, accuracy of execution and corporate efficiency are beneficial byproducts for both customers and corporate financial managers alike.

113.   Abuse of the system, however, is not entirely avoidable. To combat such abuse, Congress modified and codified the fraud statute applicable to this technology in 18 USC §1343.

114.   18 USC § 1343 states that:

"§1343. - Fraud by wire, radio, or television. Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both. If the violation affects a financial institution, not more than $1,000,000 or imprisoned not more than 30 years, or such person shall be fined both.

115.   Defendant, in the normal course and execution of his fraudulent financial scheme, utilized wire services to transmit Plaintiff's funds and Plaintiff's assets.

116.   Not trained in the law, Plaintiff has been grievously and seriously damaged - physically, emotionally, mentally and financially - as a result of Defendant's multi-layered fraud, this time involving wire fraud as described and stated.

117.   Plaintiff therefore requests the court find in his favor on this cause of action for bank

1  wire fraud.

2  **COUNT VIII**
3  **VIOLATION OF ARK. CODE ANN. § 23-42-301**

4  118.    Plaintiff repeats and re-alleges each and all of the allegations contained in paragraphs 1
5  through 117 inclusive, and incorporates those allegations at this place by this reference as though set
6  forth in full.

7  119.    Defendant Vick violated Ark. Code ann. § 23-42-301 as (i) he acted as a broker-dealer
8  without being registered as a broker-dealer.

9  120.    Plaintiff is entitled to the consideration paid, together with interest at a rate of six
10  percent (6%) from in or around 2008, and attorneys' fees and court costs based upon Defendant Vick's
11  violation of Ark. Code ann. § 23-42-301. Ark. Code Ann. § 23-42-106.

12  **COUNT IX**
**ACCOUNTING**

13  121.    Plaintiff repeats and re-alleges each and all of the allegations contained in paragraphs 1
14  through 120 inclusive, and incorporates those allegations at this place by this reference as though set
15  forth in full.

16  122.    At all times described herein, Defendant maintained control of funds and assets
17  belonging to Plaintiff and was responsible for protecting, safeguarding, investing and maintaining the
18  funds and assets.

19  123.    Because of his authority and responsibility for protecting, safeguarding, investing and
20  maintaining Plaintiff's funds, Defendant owed a fiduciary duty to Plaintiff.

21  124.    As detailed above, Defendant breached his fiduciary duties owed to Plaintiff by
22  commandeering and misappropriating Plaintiff's funds and assets for personal use and use with entities
23  in which he held a personal financial interest.

24  125.    In addition, an agreement or understanding existed between Plaintiff and Defendant
25  wherein Defendant agreed to provide certain financial services for the benefit of Plaintiff. This
26  relationship further allows for an appropriate claim for accounting to be made by Plaintiff.

27  126.    As the subject agreement involves, among other things, a duty to account for all income,
28  revenues and profits derived by Defendant in connection with maintaining and safeguarding Plaintiff's

finances and investments, and Defendant continues to fail and/or refuse to provide any such accounting to Plaintiff, it is not clear that the remedy at law would be as full, adequate, and expeditious as it is in equity.

127.    Defendant has received, and continues to receive, significant income and revenues in connection with the conversion and unlawful misappropriation of Plaintiff's funds and property, in addition to the transfer of title of certain property rightfully belonging to Plaintiff by improper means.

128.    The amount of money and property rightfully due to Plaintiff from Defendant is unknown to Plaintiff and cannot be ascertained without a full accounting and tracking of all of Defendant's bank accounts and business receipts and all funds Defendant was responsible for safeguarding and maintaining on behalf of Plaintiff.

129.    Plaintiff has demanded an accounting of the aforementioned receipts and funds from Defendant and payment of the amounts found due to Plaintiff, but Defendant has failed and refused, and continues to fail and refuse, to render such an account and pay such sums and transfer such titles.

## **PRAYER FOR RELIEF**

**WHEREFORE**, based upon the foregoing, Plaintiff Darren G. McFadden respectfully requests that this Court enter a final judgment in his favor and as against Defendant Michael Vick as follows:

1.    For damages in an amount in excess of $15,000,000.00;

2.    For all actual, general, special, economic and compensatory damages according to proof at trial;

3.    For punitive damages in an amount according to proof;

4.    That Defendant be ordered to furnish Plaintiff with a complete and accurate accounting of all of Plaintiff's monies overseen or managed by Defendant, including all revenues or profits Defendant derived through the ownership or control of Plaintiff's funds, and all real or personal property Defendant purchased or acquired with Plaintiff's funds;

5.    The imposition of a constructive trust in favor of Plaintiff of all benefits, property and monies improperly received by Defendant as a result of his wrongful conduct and disgorgement and restitution of any such benefits, property and monies improperly received by Defendant as a result of his wrongful conduct;

6.     For pre-judgment interest on all damages, at the legal rate;

7.     For costs of suit, including attorneys' fees; *and*

8.     For such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: June 7, 2016

Respectfully Submitted,

LAX, VAUGHAN, FORTSON,
ROWE & THREET, P.A.
Cantrell West Building
11300 Cantrell Road, Suite 201
Little Rock, AR  72212
(501) 376-6565
(501) 376-6666 (facsimile)
gfortson@laxvaughan.com

By: _____
Grant E. Fortson (ABN 92148)

**OF COUNSEL:**

**Simran A. Singh, Esq.** (*Pro Hac Vice* to be Filed)
  ssingh@singhtraubenlaw.com
**Michael A. Trauben, Esq.** (*Pro Hac Vice* to be Filed)
  mtrauben@singhtraubenlaw.com
**SINGH, SINGH & TRAUBEN, LLP**
400 S. Beverly Drive, Suite 240
Beverly Hills, CA 90212
Tel:    (310) 856-9705
Fax:    (888) 734-3555

*Attorneys for Plaintiff*
DARREN G. MCFADDEN

EXHIBIT "A"

ARKANSAS GENERAL DURABLE POWER OF ATTORNEY

THE POWERS YOU GRANT BELOW ARE EFFECTIVE
EVEN IF YOU BECOME DISABLED OR INCOMPETENT

NOTICE:   THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING.   THEY
ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT. IF YOU HAVE
ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE.   THIS
DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE
DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO
SO.

I, Darren McFadden, 13485 Campus Drive, Oakland, CA 94619, appoint Michael Vick, 8906 Pea
Ridge Circle, Mabelvale, AR 72103, as my Agent (attorney-in-fact) to act for me in any lawful
way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE
THE LINES IN FRONT OF THE OTHER POWERS.

TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE
LINE IN FRONT OF EACH POWER YOU ARE GRANTING.

TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT,
CROSS OUT EACH POWER WITHHELD.

Note:   If you initial Item A or Item B, which follow, a notarized signature will be required on
behalf of the Principal.

INITIAL

_____ (A) Real property transactions. .  To lease, sell, mortgage, purchase, exchange, and
acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and
acquisition of, and to accept, take, receive, and possess any interest in real property
whatsoever, on such terms and conditions, and under such covenants, as my Agent shall deem
proper; and to maintain, repair, tear down, alter, rebuild, improve manage, insure, move, rent,
lease, sell, convey, subject to liens, mortgages, and security deeds, and in any way or manner
deal with all or any part of any interest in real property whatsoever, including specifically, but
without limitation, real property lying and being situated in the State of Arkansas, under such
terms and conditions, and under such covenants, as my Agent shall deem proper and may for
all deferred payments accept purchase money notes payable to me and secured by mortgages
or deeds to secure debt, and may from time to time collect and cancel any of said notes,
mortgages, security interests, or deeds to secure debt.

_____ (B) Tangible personal property transactions.   To lease, sell, mortgage, purchase,



exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any personal property whatsoever, tangible or intangible, or interest thereto, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens or mortgages, or to take any other security interests in said property which are recognized under the Uniform Commercial Code as adopted at that time under the laws of the State of Arkansas or any applicable state, or otherwise hypothecate (pledge), and in any way or manner deal with all or any part of any real or personal property whatsoever, tangible or intangible, or any interest therein, that I own at the time of execution or may thereafter acquire, under such terms and conditions, and under such covenants, as my Agent shall deem proper.

_____ (C) Stock and bond transactions.   To purchase, sell, exchange, surrender, assign, redeem, vote at any meeting, or otherwise transfer any and all shares of stock, bonds, or other securities in any business, association, corporation, partnership, or other legal entity, whether private or public, now or hereafter belonging to me.

_____ (D) Commodity and option transactions. To buy, sell, exchange, assign, convey, settle and exercise commodities futures contracts and call and put options on stocks and stock indices traded on a regulated options exchange and collect and receipt for all proceeds of any such transactions; establish or continue option accounts for the principal with any securities or futures broker; and, in general, exercise all powers with respect to commodities and options which the principal could if present and under no disability.

_____ (E) Banking and other financial institution transactions.    To make, receive, sign, endorse, execute, acknowledge, deliver and possess checks, drafts, bills of exchange, letters of credit, notes, stock certificates, withdrawal receipts and deposit instruments relating to accounts or deposits in, or certificates of deposit of banks, savings and loans, credit unions, or other institutions or associations.   To pay all sums of money, at any time or times, that may hereafter be owing by me upon any account, bill of exchange, check, draft, purchase, contract, note, or trade acceptance made, executed, endorsed, accepted, and delivered by me or for me in my name, by my Agent.   To borrow from time to time such sums of money as my Agent may deem proper and execute promissory notes, security deeds or agreements, financing statements, or other security instruments in such form as the lender may request and renew said notes and security instruments from time to time in whole or in part.   To have free access at any time or times to any safe deposit box or vault to which I might have access.

_____ (F) Business operating transactions.   To conduct, engage in, and otherwise transact the affairs of any and all lawful business ventures of whatever nature or kind that I may now or hereafter be involved in. To organize or continue and conduct any business which term includes, without limitation, any farming, manufacturing, service, mining, retailing or other type of business operation in any form, whether as a proprietorship, joint venture, partnership, corporation, trust or other legal entity; operate, buy, sell, expand, contract, terminate or liquidate any business; direct, control, supervise, manage or participate in the operation of any

business and engage, compensate and discharge business managers, employees, agents, attorneys, accountants and consultants; and, in general, exercise all powers with respect to business interests and operations which the principal could if present and under no disability.

_____ (G) Insurance and annuity transactions.   To exercise or perform any act, power, duty, right, or obligation, in regard to any contract of life, accident, health, disability, liability, or other type of insurance or any combination of insurance; and to procure new or additional contracts of insurance for me and to designate the beneficiary of same; provided, however, that my Agent cannot designate himself or herself as beneficiary of any such insurance contracts.

_____ (H) Estate, trust, and other beneficiary transactions.   To accept, receipt for, exercise, release, reject, renounce, assign, disclaim, demand, sue for, claim and recover any legacy, bequest, devise, gift or other property interest or payment due or payable to or for the principal; assert any interest in and exercise any power over any trust, estate or property subject to fiduciary control; establish a revocable trust solely for the benefit of the principal that terminates at the death of the principal and is then distributable to the legal representative of the estate of the principal; and, in general, exercise all powers with respect to estates and trusts which the principal could exercise if present and under no disability; provided, however, that the Agent may not make or change a will and may not revoke or amend a trust revocable or amendable by the principal or require the trustee of any trust for the benefit of the principal to pay income or principal to the Agent unless specific authority to that end is given.

_____ (I) Claims and litigation.   To commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned. To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as my Agent shall deem proper.

_____ (J) Personal and family maintenance.   To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others and to remove them, and to appoint others in their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as my Agent shall deem proper.

_____ (K) Benefits from Social Security, Medicare, Medicaid, or other governmental programs, or military service.   To prepare, sign and file any claim or application for Social Security, unemployment or military service benefits; sue for, settle or abandon any claims to any benefit or assistance under any federal, state, local or foreign statute or regulation; control, deposit to any account, collect, receipt for, and take title to and hold all benefits under any Social Security, unemployment, military service or other state, federal, local or foreign statute or regulation; and, in general, exercise all powers with respect to Social Security,

unemployment, military service, and governmental benefits, including but not limited to Medicare and Medicaid, which the principal could exercise if present and under no disability.

_____ (L) Retirement plan transactions.   To contribute to, withdraw from and deposit funds in any type of retirement plan (which term includes, without limitation, any tax qualified or nonqualified pension, profit sharing, stock bonus, employee savings and other retirement plan, individual retirement account, deferred compensation plan and any other type of employee benefit plan); select and change payment options for the principal under any retirement plan; make rollover contributions from any retirement plan to other retirement plans or individual retirement accounts; exercise all investment powers available under any type of self-directed retirement plan; and, in general, exercise all powers with respect to retirement plans and retirement plan account balances which the principal could if present and under no disability.

_____ (M) Tax matters.   To prepare, to make elections, to execute and to file all tax, social security, unemployment insurance, and informational returns required by the laws of the United States, or of any state or subdivision thereof, or of any foreign government; to prepare, to execute, and to file all other papers and instruments which the Agent shall think to be desirable or necessary for safeguarding of me against excess or illegal taxation or against penalties imposed for claimed violation of any law or other governmental regulation; and to pay, to compromise, or to contest or to apply for refunds in connection with any taxes or assessments for which I am or may be liable.

_Dllc_ (N) ALL OF THE POWERS LISTED ABOVE. YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).


SPECIAL INSTRUCTIONS:

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

_____

_____

_____

_____

_____

_____

THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

THIS POWER OF ATTORNEY SHALL BE CONSTRUED AS A GENERAL DURABLE POWER OF ATTORNEY AND SHALL CONTINUE TO BE EFFECTIVE EVEN IF I BECOME DISABLED, INCAPACITATED, OR INCOMPETENT.

(YOUR AGENT WILL HAVE AUTHORITY TO EMPLOY OTHER PERSONS AS NECESSARY TO ENABLE THE AGENT TO PROPERLY EXERCISE THE POWERS GRANTED IN THIS FORM, BUT YOUR AGENT WILL HAVE TO MAKE ALL DISCRETIONARY DECISIONS. IF YOU WANT TO GIVE YOUR AGENT THE RIGHT TO DELEGATE DISCRETIONARY DECISION-MAKING POWERS TO OTHERS, YOU SHOULD KEEP THE NEXT SENTENCE, OTHERWISE IT SHOULD BE STRICKEN.)

Authority to Delegate.    My Agent shall have the right by written instrument to delegate any or all of the foregoing powers involving discretionary decision-making to any person or persons whom my Agent may select, but such delegation may be amended or revoked by any agent (including any successor) named by me who is acting under this power of attorney at the time of reference.

(YOUR AGENT WILL BE ENTITLED TO REIMBURSEMENT FOR ALL REASONABLE EXPENSES INCURRED IN ACTING UNDER THIS POWER OF ATTORNEY. STRIKE OUT THE NEXT SENTENCE IF YOU DO NOT WANT YOUR AGENT TO ALSO BE ENTITLED TO REASONABLE COMPENSATION FOR SERVICES AS AGENT.)

Right to Compensation.    My Agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.

(IF YOU WISH TO NAME SUCCESSOR AGENTS, INSERT THE NAME(S) AND ADDRESS(ES) OF SUCH SUCCESSOR(S) IN THE FOLLOWING PARAGRAPH.)

Successor Agent.    If any Agent named by me shall die, become incompetent, resign or refuse to accept the office of Agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such Agent:

_____

_____

Choice of Law.   THIS POWER OF ATTORNEY WILL BE GOVERNED BY THE LAWS OF THE STATE OF ARKANSAS WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. IT WAS EXECUTED IN THE STATE OF ARKANSAS AND IS INTENDED TO BE VALID IN ALL JURISDICTIONS OF THE UNITED STATES OF AMERICA AND ALL FOREIGN NATIONS.

I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my Agent.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this _10th_ day of _August_, 20 _08_

_[signature]_
[Your Signature]

STATEMENT OF WITNESS

On the date written above, the principal declared to me in my presence that this instrument is his general durable power of attorney and that he or she had willingly signed or directed another to sign for him or her, and that he or she executed it as his or her free and voluntary act for the purposes therein expressed.

_[signature]_____ [Signature of Witness #1]
_Datron L. Humphrey_____ [Printed or typed name of Witness #1]
_1400 Old Forge Dr._____ [Address of Witness #1, Line 1]
_Little Rock, Ar. 72227_____ [Address of Witness #1, Line 2]

_[signature]_____ [Signature of Witness #2]
_Lester Mathis_____ [Printed or typed name of Witness #2]
_2211 So. Tyler_____ [Address of Witness #2, Line 1]
_Little Rock, Ar 72204_____ [Address of Witness #2, Line 2]

A Note About Selecting Witnesses:   The agent (attorney-in-fact) may not also serve as a witness.   Each witness must be present at the time that principal signs the Power of Attorney in front of the notary. Each witness must be a mentally competent adult.   Witnesses should ideally reside close by, so that they will be easily accessible in the event they are one day needed to affirm this document's validity.

CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC

STATE OF ARKANSAS

COUNTY OF _Pulaski_

This document was acknowledged before me on _August 10, 2008_ [Date] by

_____ DARREN MCFADDEN _____ · _____ [name of principal].

[Notary Seal, if any]:

OFFICIAL SEAL
QUIANA LAWSON
PULASKI COUNTY
NOTARY PUBLIC - ARKANSAS
MY COMMISSION EXPIRES JUNE 21, 2016

(Signature of Notarial Officer)

Notary Public for the State of Arkansas

My commission expires: _June 21, 2016_

ACKNOWLEDGMENT OF AGENT

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

_MICHAEL VICK_
[Typed or Printed Name of Agent]

_Michael E Vick_
[Signature of Agent]

PREPARATION STATEMENT

This document was prepared by the following individual:

_MICHAEL VICK_
[Typed or Printed Name]

_Michael Vick_
[Signature]

EXHIBIT "B"

STATE OF <u>Arkansas</u> )
)ss.
COUNTY OF <u>Pulaski</u> )



     Before the undersigned Notary Public, duly qualified and acting in and for said State and County, appeared Darren G McFadden, who stated the following under oath after being duly sworn:

1. My name is Darren G McFadden. I am 21 years old, of sound mind, and a resident of Oakland, California.

2. Appoint Michael Vick, presently residing at 8906 Pea Ridge Circle, Mabelvale, AR, as my Financial Representative to act on my behalf for the following banking transactions only.

3. Allow Michael Vick to receive balance information and/or statements on any of my deposit and/or loan accounts with Signature Bank of Arkansas.

4. Allow Michael Vick to deposit funds into any of my deposit and/or loan accounts with Signature Bank of Arkansas.

5. Allow Michael Vick to transfer funds from any of my deposit and/or loan accounts to my mother, Mini Imah H Muhammad's account.

6. Allow Michael Vick to transfer funds from any of my deposit and/or loan accounts to my father, Gralon McFadden's account.

7. Allow Michael Vick to transfer funds from any of my deposit and/or loan accounts to Michael A Conley's account.

EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

IN WITNESS WHEREOF, I hereunto set my hand on this <u>13TH</u> day of <u>January</u>, 20<u>09</u>.

<u>Darren McFadden</u>
Darren G McFadden

Subscribed and sworn to before me, a Notary Public, this <u>13TH</u> day of <u>January</u>, 20 <u>09</u>.

Notary Public

My Commission Expires: <u>June 21, 2016</u>

OFFICIAL SEAL
QUIANA LAWSON
PULASKI COUNTY
NOTARY PUBLIC - ARKANSAS
MY COMMISSION EXPIRES JUNE 21, 2016

EXHIBIT "C"

## POWER OF ATTORNEY REVOCATION

I, ___DARREN MCFADDEN___ , having the authorization to grant and revoke the power of general attorney, do hereby revoke, annul, cancel and nullify, in its entirety, the power of attorney bestowed to ___MICHAEL VICK___ on the ___15th___ day of ___MAY___ 20 ___15___ , in the county of ___PULASKI___ in the state of ___ARKANSAS___ .

All authority, rights and powers previously granted to the aforementioned attorney are now rescinded, terminated, and dismissed, as of the date proceeding this statement.

Name of Grantor: ___DARREN MCFADDEN___ Signature: _____

Revocation of Power of Attorney executed this day, the ___15TH___ of ___MAY___ 20 ___15___

In the

State of: ___ARKANSAS___

County of: ___PULASKI___

On the ___15th___ day of ___May___ 20 ___15___ , ___Tametra Lasha Massey___
                                                                                    Notary
personally appeared, ___Darren McFadden___ ,
known by me personally or proven, under oath or signature, to be the person who is subscribed, by name, to the instrument in question, and that she/he/they executed the instrument within her/his/their authorized capacity(ies) either on their behalf or upon the behalf of the person who authorized the transaction.

I attest, under the penalty of perjury within the state of ___Arkansas___
that the above statement is completely factual and true.

Witness by my hand and official seal: _____
                                                                        Signature

Affiant: ☐ Known   ☐ Unknown

ID Produced _____

ARKANSAS GENERAL DURABLE POWER OF ATTORNEY

THE POWERS YOU GRANT BELOW ARE EFFECTIVE
EVEN IF YOU BECOME DISABLED OR INCOMPETENT

NOTICE:   THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING.   THEY
ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT. IF YOU HAVE
ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE.   THIS
DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE
DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO
SO.

I, Darren McFadden, 13485 Campus Drive, Oakland, CA 94619, appoint Michael Vick, 8906 Pea
Ridge Circle, Mabelvale, AR 72103, as my Agent (attorney-in-fact) to act for me in any lawful
way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE
THE LINES IN FRONT OF THE OTHER POWERS.

TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE
LINE IN FRONT OF EACH POWER YOU ARE GRANTING.

TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT,
CROSS OUT EACH POWER WITHHELD.

Note:   If you initial Item A or Item B, which follow, a notarized signature will be required on
behalf of the Principal.

INITIAL

_____ (A) Real property transactions. .  To lease, sell, mortgage, purchase, exchange, and
acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and
acquisition of, and to accept, take, receive, and possess any interest in real property
whatsoever, on such terms and conditions, and under such covenants, as my Agent shall deem
proper; and to maintain, repair, tear down, alter, rebuild, improve manage, insure, move, rent,
lease, sell, convey, subject to liens, mortgages, and security deeds, and in any way or manner
deal with all or any part of any interest in real property whatsoever, including specifically, but
without limitation, real property lying and being situated in the State of Arkansas, under such
terms and conditions, and under such covenants, as my Agent shall deem proper and may for
all deferred payments accept purchase money notes payable to me and secured by mortgages
or deeds to secure debt, and may from time to time collect and cancel any of said notes,
mortgages, security interests, or deeds to secure debt.

_____ (B) Tangible personal property transactions.   To lease, sell, mortgage, purchase,



exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any personal property whatsoever, tangible or intangible, or interest thereto, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens or mortgages, or to take any other security interests in said property which are recognized under the Uniform Commercial Code as adopted at that time under the laws of the State of Arkansas or any applicable state, or otherwise hypothecate (pledge), and in any way or manner deal with all or any part of any real or personal property whatsoever, tangible or intangible, or any interest therein, that I own at the time of execution or may thereafter acquire, under such terms and conditions, and under such covenants, as my Agent shall deem proper.

_____ (C) Stock and bond transactions.   To purchase, sell, exchange, surrender, assign, redeem, vote at any meeting, or otherwise transfer any and all shares of stock, bonds, or other securities in any business, association, corporation, partnership, or other legal entity, whether private or public, now or hereafter belonging to me.

_____ (D) Commodity and option transactions. To buy, sell, exchange, assign, convey, settle and exercise commodities futures contracts and call and put options on stocks and stock indices traded on a regulated options exchange and collect and receipt for all proceeds of any such transactions; establish or continue option accounts for the principal with any securities or futures broker; and, in general, exercise all powers with respect to commodities and options which the principal could if present and under no disability.

_____ (E) Banking and other financial institution transactions.    To make, receive, sign, endorse, execute, acknowledge, deliver and possess checks, drafts, bills of exchange, letters of credit, notes, stock certificates, withdrawal receipts and deposit instruments relating to accounts or deposits in, or certificates of deposit of banks, savings and loans, credit unions, or other institutions or associations.   To pay all sums of money, at any time or times, that may hereafter be owing by me upon any account, bill of exchange, check, draft, purchase, contract, note, or trade acceptance made, executed, endorsed, accepted, and delivered by me or for me in my name, by my Agent.   To borrow from time to time such sums of money as my Agent may deem proper and execute promissory notes, security deeds or agreements, financing statements, or other security instruments in such form as the lender may request and renew said notes and security instruments from time to time in whole or in part.   To have free access at any time or times to any safe deposit box or vault to which I might have access.

_____ (F) Business operating transactions.   To conduct, engage in, and otherwise transact the affairs of any and all lawful business ventures of whatever nature or kind that I may now or hereafter be involved in. To organize or continue and conduct any business which term includes, without limitation, any farming, manufacturing, service, mining, retailing or other type of business operation in any form, whether as a proprietorship, joint venture, partnership, corporation, trust or other legal entity; operate, buy, sell, expand, contract, terminate or liquidate any business; direct, control, supervise, manage or participate in the operation of any

business and engage, compensate and discharge business managers, employees, agents, attorneys, accountants and consultants; and, in general, exercise all powers with respect to business interests and operations which the principal could if present and under no disability.

_____ (G) Insurance and annuity transactions.   To exercise or perform any act, power, duty, right, or obligation, in regard to any contract of life, accident, health, disability, liability, or other type of insurance or any combination of insurance; and to procure new or additional contracts of insurance for me and to designate the beneficiary of same; provided, however, that my Agent cannot designate himself or herself as beneficiary of any such insurance contracts.

_____ (H) Estate, trust, and other beneficiary transactions.   To accept, receipt for, exercise, release, reject, renounce, assign, disclaim, demand, sue for, claim and recover any legacy, bequest, devise, gift or other property interest or payment due or payable to or for the · principal; assert any interest in and exercise any power over any trust, estate or property subject to fiduciary control; establish a revocable trust solely for the benefit of the principal that terminates at the death of the principal and is then distributable to the legal representative of the estate of the principal; and, in general, exercise all powers with respect to estates and trusts which the principal could exercise if present and under no disability; provided, however, that the Agent may not make or change a will and may not revoke or amend a trust revocable or amendable by the principal or require the trustee of any trust for the benefit of the principal to pay income or principal to the Agent unless specific authority to that end is given.

_____ (I) Claims and litigation.   To commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned. To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as my Agent shall deem proper.

_____ (J) Personal and family maintenance.   To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others and to remove them, and to appoint others in their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as my Agent shall deem proper.

_____ (K) Benefits from Social Security, Medicare, Medicaid, or other governmental programs, or military service.   To prepare, sign and file any claim or application for Social Security, unemployment or military service benefits; sue for, settle or abandon any claims to any benefit or assistance under any federal, state, local or foreign statute or regulation; control, deposit to any account, collect, receipt for, and take title to and hold all benefits under any Social Security, unemployment, military service or other state, federal, local or foreign statute or regulation; and, in general, exercise all powers with respect to Social Security,

unemployment, military service, and governmental benefits, including but not limited to Medicare and Medicaid, which the principal could exercise if present and under no disability.

_____ (L) Retirement plan transactions.   To contribute to, withdraw from and deposit funds in any type of retirement plan (which term includes, without limitation, any tax qualified or nonqualified pension, profit sharing, stock bonus, employee savings and other retirement plan, individual retirement account, deferred compensation plan and any other type of employee benefit plan); select and change payment options for the principal under any retirement plan; make rollover contributions from any retirement plan to other retirement plans or individual retirement accounts; exercise all investment powers available under any type of self-directed retirement plan; and, in general, exercise all powers with respect to retirement plans and retirement plan account balances which the principal could if present and under no disability.

_____ (M) Tax matters.   To prepare, to make elections, to execute and to file all tax, social security, unemployment insurance, and informational returns required by the laws of the United States, or of any state or subdivision thereof, or of any foreign government; to prepare, to execute, and to file all other papers and instruments which the Agent shall think to be desirable or necessary for safeguarding of me against excess or illegal taxation or against penalties imposed for claimed violation of any law or other governmental regulation; and to pay, to compromise, or to contest or to apply for refunds in connection with any taxes or assessments for which I am or may be liable.

_DUe_ (N) ALL OF THE POWERS LISTED ABOVE. YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).


SPECIAL INSTRUCTIONS:

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

_____

_____

_____

_____

_____

_____

_____

THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

THIS POWER OF ATTORNEY SHALL BE CONSTRUED AS A GENERAL DURABLE POWER OF ATTORNEY AND SHALL CONTINUE TO BE EFFECTIVE EVEN IF I BECOME DISABLED, INCAPACITATED, OR INCOMPETENT.

(YOUR AGENT WILL HAVE AUTHORITY TO EMPLOY OTHER PERSONS AS NECESSARY TO ENABLE THE AGENT TO PROPERLY EXERCISE THE POWERS GRANTED IN THIS FORM, BUT YOUR AGENT WILL HAVE TO MAKE ALL DISCRETIONARY DECISIONS. IF YOU WANT TO GIVE YOUR AGENT THE RIGHT TO DELEGATE DISCRETIONARY DECISION-MAKING POWERS TO OTHERS, YOU SHOULD KEEP THE NEXT SENTENCE, OTHERWISE IT SHOULD BE STRICKEN.)

Authority to Delegate.   My Agent shall have the right by written instrument to delegate any or all of the foregoing powers involving discretionary decision-making to any person or persons whom my Agent may select, but such delegation may be amended or revoked by any agent (including any successor) named by me who is acting under this power of attorney at the time of reference.

(YOUR AGENT WILL BE ENTITLED TO REIMBURSEMENT FOR ALL REASONABLE EXPENSES INCURRED IN ACTING UNDER THIS POWER OF ATTORNEY. STRIKE OUT THE NEXT SENTENCE IF YOU DO NOT WANT YOUR AGENT TO ALSO BE ENTITLED TO REASONABLE COMPENSATION FOR SERVICES AS AGENT.)

Right to Compensation.   My Agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.

(IF YOU WISH TO NAME SUCCESSOR AGENTS, INSERT THE NAME(S) AND ADDRESS(ES) OF SUCH SUCCESSOR(S) IN THE FOLLOWING PARAGRAPH.)

Successor Agent.   If any Agent named by me shall die, become incompetent, resign or refuse to accept the office of Agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such Agent:

_____

_____

Choice of Law.   THIS POWER OF ATTORNEY WILL BE GOVERNED BY THE LAWS OF THE STATE OF ARKANSAS WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. IT WAS EXECUTED IN THE STATE OF ARKANSAS AND IS INTENDED TO BE VALID IN ALL JURISDICTIONS OF THE UNITED STATES OF AMERICA AND ALL FOREIGN NATIONS.

I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my Agent.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this _10th_ day of _August_____, 20_08_

_Dane Teitman_
[Your Signature]

## STATEMENT OF WITNESS

On the date written above, the principal declared to me in my presence that this instrument is his general durable power of attorney and that he or she had willingly signed or directed another to sign for him or her, and that he or she executed it as his or her free and voluntary act for the purposes therein expressed.

_Stephen L. Humphrey_____ [Signature of Witness #1]
_Datron L. Humphrey_____ [Printed or typed name of Witness #1]
_1400 Old Forge Dr._____ [Address of Witness #1, Line 1]
_Little Rock, Ar. 72227_____ [Address of Witness #1, Line 2]


_Jody Mathis_____ [Signature of Witness #2]
_Lester Mathis_____ [Printed or typed name of Witness #2]
_22 11 So. Tyler_____ [Address of Witness #2, Line 1]
_Little Rock, Ar 72204_____ [Address of Witness #2, Line 2]

A Note About Selecting Witnesses:  The agent (attorney-in-fact) may not also serve as a witness.  Each witness must be present at the time that principal signs the Power of Attorney in front of the notary. Each witness must be a mentally competent adult.  Witnesses should ideally reside close by, so that they will be easily accessible in the event they are one day needed to affirm this document's validity.


## CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC

## STATE OF ARKANSAS

COUNTY OF *Pulaski*

This document was acknowledged before me on _AuGuST 10, 2008_ [Date] by
_____DARREN MCFADDEN_____ [name of principal].

[Notary Seal, if any]:

OFFICIAL SEAL
QUIANA LAWSON
PULASKI COUNTY
NOTARY PUBLIC - ARKANSAS
MY COMMISSION EXPIRES JUNE 21, 2016

(Signature of Notarial Officer)

Notary Public for the State of Arkansas

My commission expires: _June 21, 2016_

ACKNOWLEDGMENT OF AGENT

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY
AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

_MICHAEL VICK_____
[Typed or Printed Name of Agent]

_____
[Signature of Agent]

PREPARATION STATEMENT

This document was prepared by the following individual:

_MICHAEL VICK_____
[Typed or Printed Name]

_____
[Signature]

STATE OF <u>Arkansas</u>     )
                                         )ss.
COUNTY OF <u>Pulaski</u>     )

Before the undersigned Notary Public, duly qualified and acting in and for said State and County, appeared Darren G McFadden, who stated the following under oath after being duly sworn:

1. My name is Darren G McFadden.  I am 21 years old, of sound mind, and a resident of Oakland, California.

2. Appoint Michael Vick, presently residing at 8906 Pea Ridge Circle, Mabelvale, AR, as my Financial Representative to act on my behalf for the following banking transactions only.

3. Allow Michael Vick to receive balance information and/or statements on any of my deposit and/or loan accounts with Signature Bank of Arkansas.

4. Allow Michael Vick to deposit funds into any of my deposit and/or loan accounts with Signature Bank of Arkansas.

5. Allow Michael Vick to transfer funds from any of my deposit and/or loan accounts to my mother, Mini Imah H Muhammad's account.

6. Allow Michael Vick to transfer funds from any of my deposit and/or loan accounts to my father, Gralon McFadden's account.

7. Allow Michael Vick to transfer funds from any of my deposit and/or loan accounts to Michael A Conley's account.

EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

IN WITNESS WHEREOF, I hereunto set my hand on this <u>13TH</u> day of <u>January</u>, 20<u>09</u>.

Darren G McFadden

Subscribed and sworn to before me, a Notary Public, this <u>13TH</u> day of <u>January</u>, 20 <u>09</u>.

Notary Public

My Commission Expires: <u>June 21, 2016</u>

OFFICIAL SEAL
QUIANA LAWSON
PULASKI COUNTY
NOTARY PUBLIC - ARKANSAS
MY COMMISSION EXPIRES JUNE 21, 2016